IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANFERNEE OMAR CRUZ-FAJARDO,<br><br>      Defendant. | CRIMINAL ACTION FILE<br><br>NUMBER 1:16-cr-0014-TCB |

## **O R D E R**

This case comes before the Court on Magistrate Judge Linda T. Walker's Report and Recommendation ("R&R") [57], which recommends denying Defendant Anfernee Omar Cruz-Fajardo's motion to dismiss the indictment [33] and motion to suppress [34]. Also pending before the Court is a second R&R from Magistrate Judge Walker [64], which recommends denying Cruz-Fajardo's motions to compel discovery [40 & 62]. Cruz-Fajardo has filed objections to both R&Rs [61 & 67].

## I. Factual and Procedural Overview[1]

This case involves an FBI investigation into a suspected child pornography website (the "target website"). The target website was a message board that was accessible on TOR, which stands for "the onion router," a network that provides anonymity for users accessing the site. Users were required to install TOR software before they could access the site. The target website could not be located through normal internet search engines; it could be directly accessed only through the TOR network. Users had to register with the target website before they could access the site's content.

In January 2015, the FBI seized control of the target website. Rather than shutting the website down, the FBI continued to operate it from a government-controlled server in Newington, Virginia. On February 20, 2015, the FBI obtained a warrant from a magistrate judge in the Eastern District of Virginia to deploy the "Network Investigative Technique" or "NIT" software onto the target website. The NIT software

---

[1] In the R&Rs, Magistrate Judge Walker detailed the facts of this case. The Court will summarize portions of the factual background to the extent they are relevant to Cruz-Fajardo's objections.

2

is essentially a form of malware that sent instructions to any computer accessing the target website. These instructions caused the accessing computer to transmit certain information, including its IP address, to the FBI.

The Government alleges that on March 2, 2015, Cruz-Fajardo logged on to the target website, at which point the NIT software instructed his computer to transmit its true IP address. The FBI then used the IP address to obtain Cruz-Fajardo's street address from his internet service provider and obtained a search warrant for that address. While executing the warrant, the FBI found child pornography on Cruz-Fajardo's computer.[2]

On August 25, Cruz-Fajardo moved to dismiss the indictment [33] and to suppress the search warrant [34], arguing that the original warrant to deploy the NIT software violated the Fourth Amendment. On December 15, Cruz-Fajardo moved to compel the Government to disclose the NIT source code [40].

---

[2] During execution of the warrant, Curz-Fajardo allegedly admitted to visiting the target website. However, his statements remain subject to a pending motion to suppress [28], though the Court need not decide that issue when considering the objections to the R&Rs.

On May 1, 2017, Magistrate Judge Walker issued the first R&R [57], which recommends denying Cruz-Fajardo's motions to dismiss the indictment and to suppress the search warrant. Cruz-Fajardo objected to the R&R [61], and also filed a supplemental motion to compel disclosure of the NIT source code [62]. On June 8, Magistrate Judge Walker issued the second R&R [64], which recommends denying the original and supplemental motions to compel. On June 21, Cruz-Fajardo filed objections to the second R&R [67].

**II.     Legal Standard on Review of a Magistrate Judge's R&R**

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (A judge must "give fresh consideration to those issues to which specific objection has been made by a party."). Those portions

of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

After conducting a complete and careful review of the R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge may also receive further evidence or

recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C).

### III. Cruz-Fajardo's Objections

Cruz-Fajardo objects to the first R&R's conclusion that the search warrant is not subject to the exclusionary rule for violations of the Fourth Amendment. He also objects to the conclusions that the warrant fits the good faith exception to the exclusionary rule, and that the outrageous government conduct defense is inapplicable. Finally, Cruz-Fajardo objects to the second R&R's conclusion that he has failed to demonstrate that the NIT source code is material to his defense.

#### A. Suppression Is Not Warranted

Cruz-Fajardo objects to the first R&R on the grounds that the search warrant issued in the Eastern District of Virginia violated Federal Rule of Criminal Procedure 41(b)(4) and was therefore "void ab initio." Cruz-Fajardo also objects on the grounds that he was prejudiced by the issuance of a defective warrant. For these two reasons, he argues that any evidence discovered pursuant to the warrant should be excluded from the prosecution against him.

The R&R concludes that the warrant violated Rule 41, but that ultimately it should not be subject to the exclusionary rule. *See* [57] at 17–19. Even if the Court credits Cruz-Fajardo's arguments regarding application of the exclusionary rule, the evidence would still not be suppressed because the good faith exception is applicable to this case.

"The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 139–40 (2009). The exclusionary rule is "not an individual right," but is instead a tool used to deter violations of the Fourth Amendment. *Id.* at 141. Therefore, "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002). This "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Taxacher*, 902 F.2d 867,

871 (11th Cir. 1990) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

Cruz-Fajardo argues that the good faith exception cannot apply because the warrant was "void ab initio"—that is, it was null and void from its inception. However, there is no support for this conclusion in the law of the Eleventh Circuit. Cruz-Fajardo cites to a concurring opinion from a Tenth Circuit case[3] and to "Fourth Amendment common law," [61] at 2, but the Court is bound to follow the law of this circuit. Moreover, Cruz-Fajardo's argument goes against the bulwark of cases in other jurisdictions that have considered this issue. *See United States v. Wheeler*, No. 1:15-cr-390-MHC-JFK, 2017 WL 3589564, at *2–4 (N.D. Ga. Aug. 21, 2017) (discussing the "more than fifty decisions . . . issued by district courts considering motions to suppress the NIT warrant" and concluding that the vast majority decided against suppression and did not follow the "void ab initio" doctrine).

---

[3] *United States v. Krueger*, 809 F.3d 1109, 1123 (10th Cir. 2015) (Gorsuch J., concurring).

Cruz-Fajardo next argues that it was not reasonable for the FBI to rely on the warrant because given the agents' experience and knowledge of the NIT software and the target website, they would have known when applying for the warrant that it would apply outside the Eastern District of Virginia. [61] at 6. However, the Court agrees with the R&R that the agents, confronted with the murky state of the law regarding NIT warrants,[4] could not reasonably believe that the warrant was issued without jurisdiction. *See United States v. Lara*, 588 F. App'x 935, 939 (11th Cir. 2014) (applying good faith exception because "interpretation of Georgia's wiretap statute was in flux at the time the officers obtained the warrant, and it was objectively reasonable for the officers to rely on the warrant").

Therefore, application of the good faith exception is warranted, and the evidence obtained pursuant to the search warrant should not be suppressed.

---

[4] *See* [57] at 21 (citing conflicting caselaw on application of Rule 41(b) to NIT warrants).

## B. Government Conduct Was Not Outrageous

Cruz-Fajardo next objects to the first R&R on the grounds that the Government's conduct was sufficiently outrageous to violate his due process rights.

The defense of outrageous governmental conduct "focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition." *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998). The defense applies "when the government's involvement [in criminal activity] violates fundamental fairness and shocks the universal cause of justice." *United States v. Lopez-Cruz*, 170 F. App'x 634, 636 (11th Cir. 2006). The "'totality of the circumstances' must be considered 'with no single factor controlling.'" *United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir. 1987) (quoting *United States v. Russell*, 411 U.S. 423, 432 (1973)).

In considering all of the facts and circumstances as alleged in the case, the Court agrees with the R&R that Cruz-Fajardo has failed to demonstrate that the Government's conduct was outrageous. The Government did not create the target website, nor did it add any

pornographic images or advertise the site to new users. Hence, there is no basis to find that the Government lured Cruz-Fajardo into committing any crimes he was otherwise not predisposed to commit. Given the hidden nature of the target website, it is highly unlikely that Cruz-Fajardo visited the site accidentally. Finally, the Government's infiltration of an existing criminal enterprise in order to track and identify participants is not outrageous or shocking to considerations of due process. *See Sanchez*, 138 F.3d at 1413 ("Government infiltration of criminal activity is a recognized and permissible mean of investigation." (citing *Russell*, 411 U.S. at 432)).

Accordingly, the defense of outrageous government conduct is inapplicable to this case.

### C. Disclosure of the NIT Source Code

Finally, Cruz-Fajardo objects to the second R&R on the grounds that the NIT source code is material to his trial defense under Federal Rule of Criminal Procedure 16.

The Government is required to "permit the defendant to inspect and to copy" records in the Government's possession. FED. R. CRIM. P.

11

16(a)(1)(E). However, items "need not be disclosed unless the defendant demonstrates that it is material to preparation of his defense." *United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003). "[T]he defendant must make . . . an explanation of how it will be 'helpful to the defense.'" *Id.* (quoting *United States v. Marshall*, 132 F.3d 63, 67–68 (D.C. Cir. 1998)). Materiality means that disclosure of the records "would . . . enable the defendant significantly to alter the quantum of proof in his favor." *Id.* at 1251 (quoting *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978)). "[C]onclusory argument[s] that the requested item is material to the defense" will not suffice. *Id.* at 1250.

Cruz-Fajardo argues that the source code[5] is needed to determine whether the NIT software worked as the Government claimed it did, and to possibly support claims that the NIT software may have uploaded images of child pornography to Cruz-Fajardo's computer without his knowledge or altered the security settings on his computer so that someone else could download child pornography. *See* [40] at 6–9.

---

[5] In his supplemental motion, Cruz-Fajardo "streamlined" his motion at the request of the Court to the following items: "1. Unique identifier generator (running on the [Target website]) . . . 2. Exploit software . . . [and] 3. Data logger, running on a separate Government Logging Server." [62] at ¶3.

12

Cruz-Fajardo's contentions are without merit. He has no reason to believe that the Government, or anyone else, planted the images of child pornography on his computer, and turning over the NIT source code is not warranted by such conjecture. *See Jordan*, 316 F.3d at 1250 (discovery cannot be compelled based on "conclusory argument"). The Government has provided Cruz-Fajardo with the relevant portions of the software that were used to identify his computer.[6] Without a factual basis for asserting that other portions of the code are relevant, Cruz-Fajardo is not entitled to compel such discovery. *See, e.g.*, *United States v. Gaver*, No. 3:16-cr-88, 2017 WL 1134814, at *3–4 (S.D. Ohio Mar. 27, 2017) ("Having reviewed the relevant case law, the Court concludes that the exploit and server components of the NIT source code are not material to Gaver's defense and, even if they were, they are subject to the law enforcement privilege."); *United States v. Owens*, No. 16-CR-38-JPS, 2016 WL 7351270, at *6 (E.D. Wis. Dec. 19, 2016) (denying request

---

[6] *See* [64] at 9 ("Defendant has been given portions of the software, has been given the unique identifier generator, has been provided with the instructions that the NIT source code sent to Defendant's computer, and has been given a demonstration of how the instructions collected information from the Defendant's computer.").

13

to compel NIT source code that was based on defendant's "vague conjecture about the dangers of hacking"); *United States v. McLamb*, 220 F. Supp. 3d 663, 674–76 (E.D. Va. 2016) (characterizing request for NIT source code as "an impermissible 'fishing expedition'"); *United States v. Jean*, No. 5:15-CR-50087-001, 2016 WL 6886871, at *7 (W.D. Ark. Nov. 22, 2016) ("[S]imply knowing how the exploit picked the lock would not materially assist the defense in better understanding the relative plausibility of a third-party hacking defense. Regardless of what [defendant's expert] might learn from the exploit code, the third-party hacker defense would still be predicated on the simultaneous existence of a long string of hypothetical circumstances.").

### IV. Portions of the R&Rs Not Objected to

As to the remaining parts of the R&Rs that Cruz-Fajardo has not objected to, the Court has completed a careful review and finds no plain error in Magistrate Judge Walker's factual or legal conclusions.

### V. Conclusion

Accordingly, the Court adopts is its orders the R&Rs [57 & 64]. Cruz-Fajardo's motions to dismiss the indictment [33] and to suppress

the search warrant [34] are denied. His motion and supplemental motion to compel [40 & 62] are denied.

IT IS SO ORDERED this 23rd day of August, 2017.

_____
Timothy C. Batten, Sr.
United States District Judge